IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         Case No. 12-10200-JTM

JOSEPH A. MORRISON,

        Defendant.

MEMORANDUM AND ORDER

      This matter comes before the court on defendant Joseph A. Morrison's Motion to

Suppress (Dkt. 14). He moves to suppress evidence collected as a result of his detention

and a search of his backpack based on a dog sniff. The court held a hearing on the

matter on January 9, 2013, and is now prepared to rule. For the following reasons, the

court grants Morrison's motion to the extent set forth below.

I. Factual Background

      On July 22, 2012, at around 10:15 p.m., Trooper James Robinson drove to a

reported accident scene on S. Washington Street in a rural area near Great Bend,

Kansas. Defendant Morrison had hit a car that had been parked in a driveway.

Robinson recognized Morrison and his passenger from a disturbance call he had

responded to on July 4, just a couple of weeks earlier. Robinson testified that during the

July 4 disturbance, Morrison was alleged to have threatened to use a handgun that he

kept in his car. Ultimately, Morrison did not give police consent to search his vehicle,

and no gun was ever found.

At the accident scene after the parties exchanged their insurance information, Sandra Hernandez, a resident of a nearby house, told Robinson that before he arrived she had seen Morrison take a long gun case and backpack from his car and place them behind a tree nearby. She said that after some dogs began to sniff and scratch at the bag Morrison moved the items again. Morrison was still present while Hernandez was speaking with Robinson, but he did not ask Morrison about it because Hernandez had said that she was uncomfortable coming forward with this information in Morrison's presence.

Robinson left after giving Hernandez a phone number she could call to reach him if she had more information to report. He drove a couple of blocks from the scene and stopped to complete some accident paperwork. Fernando Loera, the owner of the car Morrison had sideswiped, drove up to Robinson and told him that Morrison was walking down Washington Street with the gun case and backpack. Robinson called for backup. When Deputy Lloyd from the Barton County Sheriff's Office arrived, Robinson asked him to locate Morrison. Lloyd knew who Morrison was and recognized him walking down Washington Street. Robinson drove to the spot where Lloyd had reportedly seen Morrison.

After driving up to Morrison, Robinson got out of his car and addressed the man, ordering him to keep his hands out of his pockets. Morrison obeyed, spreading his arms wide and dropping the bag of potato chips he was carrying. Robinson inquired about the gun case and backpack, and Morrison replied that he did not have anything and was not hiding anything. Robinson frisked Morrison and did not find any weapons on

2

his person. Robinson walked away from his patrol vehicle while searching along the sides of the road for the items with his flashlight. Morrison remained by the car with Deputy Lloyd.

After spotting the items several yards off the road in a field, Robinson asked Morrison: "Is this bag here yours? What about the gun case right next to it?" Morrison responded that the items were his and that he had a gun in the gun case. Morrison walked over to the items with Lloyd following from behind, until Robinson said "Stop right where you're at." Robinson asked whether Morrison had anything illegal in the backpack and whether there was a gun in the gun case. Morrison responded only that there was a gun in the gun case.

Robinson asked Morrison for permission to search both items, and Morrison gave him permission to search the gun case alone. Morrison said the backpack was his but did not give consent for Robinson to search it. Robinson responded to Morrison's denial of permission by guessing that there was dope in the backpack. Robinson asked why Morrison had taken the gun out of the car, and Morrison explained he did not know what the gun laws were and did not want the police officer to see the gun for fear of losing it. Robinson called Lloyd to request a K-9 unit. Before the K-9 unit came, Robinson told Morrison that although he was not yet under arrest, he was "not free to go either."

A short time later, Deputy Conaway arrived with his dog, Rocco, which is certified by the Kansas Police Dog Association. Conaway placed two additional bags from his patrol car in line with the two bags in the field. Rocco sat between the gun and

the backpack, facing the backpack. After Conaway said that Rocco's actions would be sufficient to justify a search under Barton County Sheriff's Office's policies, Robinson searched the backpack. He found methamphetamine, marijuana, a large amount of cash, and a 9mm Smith & Wesson handgun with ammunition. Morrison was arrested and transported to Barton County Jail.

II. Reasonable Suspicion to Detain and Frisk Morrison

First, the court must decide whether Robinson's investigative detention and frisk of Morrison were proper. Investigative detentions are Fourth Amendment seizures of limited scope and duration. *See United States v. Madden*, 683 F.3d 920, 925 (10th Cir. 2012). In order to affect a lawful stop, police must have an objectively reasonable and articulable suspicion that criminal activity is afoot. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989). A protective frisk of the suspect's outer clothing is proper if the officer reasonably believes that the suspect might be armed and dangerous. *Terry v. Ohio*, 392 U.S. 1, 27–30 (1968). In determining whether reasonable suspicion exists, we look at the totality of the circumstances. *United States v. McHugh*, 639 F.3d 1250, 1256 (10th Cir. 2011). Reasonable suspicion requires only "some minimal level of objective justification." *Sokolow*, 490 U.S. at 7 (internal quotation marks omitted).

Morrison argues that reports of a person carrying a rifle case and backpack out in the country do not provide an officer with an objectively reasonable basis to suspect criminal activity. However, the reports that Robinson had received established a reasonable basis for him to believe that Morrison was intentionally hiding the contents of these items from police eyes. Morrison reasonably should have known the police would show up after his

accident, and Robinson had received information that he had removed items from the vehicle before police arrived. Hernandez told Robinson that Morrison had initially placed the gun case and backpack in a field away from the scene of the accident then moved them behind a tree after neighborhood dogs began taking an interest in the items. Robinson also found out that once he had left, Morrison had retrieved the items and was carrying them down the road. When Robinson caught up to Morrison, he did not have either item on his person. At that point, Morrison was not merely a man carrying a rifle case and a backpack out in the country. In a reasonable officer's mind, Morrison was potentially trying to hide these items from the authorities, one of which might be a dangerous weapon.

The government does not challenge that the *Terry* stop began when Robinson got out of his car and ordered Morrison to keep his hands out of his pockets. The court finds that Robinson had an objectively reasonable basis at that moment to suspect that criminal activity was afoot. *See Sokolow*, 490 U.S. at 7. As the court explains below, Robinson's suspicions only grew from the inception of this investigative detention to the point of Morrison's arrest. The court finds that there was never a moment during Morrison's detention that Robinson did not have adequate reasonable suspicion; the entire detention was justified.

The court also assesses Robinson's *Terry* frisk of Morrison. Morrison had been reported threatening people with a gun on an incident Robinson had responded to earlier that month. Robinson had been told that on this day, Morrison was carrying a rifle around and concealing it from police. Given this background, the court finds that Robinson had reasonable grounds to frisk Morrison for officer safety. *See Terry*, 392 U.S. at 27–30.

III. Probable Cause to Search Backpack

Morrison's motion argues that the certification of the K-9 unit was not credible and that the dog did not give a sufficient final response to provide probable cause to search the backpack. The court analyzes these issues in the broader context of whether Robinson had probable cause to search of Morrison's backpack.[1] The court reviews first the facts leading up to the dog sniff.

### A. Probable Cause Before the Dog Sniff

The Fourth Amendment "right of the people to be secure in their persons . . . against unreasonable searches and seizures" generally requires a law enforcement officer to have probable cause for conducting a search. *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370 (2009). "Probable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed, and that evidence bearing on that offense will be found in the place to be searched." *Id.* (internal quotations omitted).

Although Morrison's only challenge to the search of his backpack focuses on the K-9 unit's certification and final response, the court takes note of the facts known to Robinson before the dog sniff. Upon seeing Morrison on the road, Robinson got out of his car and asked whether Morrison had a gun case or backpack that he had been carrying. Morrison denied this, despite what the two people from the accident scene had told

---

[1] It is unclear whether Morrison has standing to challenge the search of a backpack that (1) he initially denied was his and (2) had been apparently abandoned in a field several yards away from the road. The court presumes Morrison's legitimate expectation of privacy in this backpack to be reasonable because the government has not challenged it.

Robinson. After a quick search with his flashlight, Robinson found these items in the field a short distance away. At that moment, Robinson was justified in believing that Morrison had lied to him about not having the items before. A few minutes later, Morrison stated that they were his. Morrison consented to Robinson searching the gun case, which he found contained an SKS assault rifle.[2]

Robinson asked why Morrison had taken the items out of his car, and Morrison explained he was afraid he would lose the gun because he did not know what the gun laws were. Morrison's fear that he might be illegally carrying a weapon sufficiently explained why he took the gun case out of his car. However, his failure to explain his removal of the backpack reasonably raised Robinson's suspicions of its contents.  One clear implication of Morrison's answer was that both items he removed contained something that might be illegal. Although Robinson's database check revealed that the gun had not been reported as stolen, this did not fully clear up matters, because Morrison had already admitted that he did not have the paperwork for the gun and he

---

[2]    Morrison did not consent to a search of his backpack. The U.S. Court of Appeals for the Tenth Circuit has determined that "the exercise of a right to refuse consent *alone* cannot be the basis of reasonable suspicion." *United States v. Manuel*, 992 F.2d 272, 274 (10th Cir. 1993) (emphasis added) (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983)). In *Manuel*, two drug interdiction officers spoke with the defendant and asked to search the bag he was carrying. *Id.* at 273. He consented to this search. *Id.* When an officer found a small box wrapped in Christmas paper, Manuel said it contained "perfume or something," but refused three requests by the officers for his consent to open the package. *Id.* The court held that these refusals could not provide the only basis for reasonable suspicion, but the court found that the officers had more than the refusals upon which they could justify searching the package. *Id.* at 274–75.

This case is similar to *Manuel* as in both cases the defendant gave his consent to the search of one item but refused his consent to search a second item. This case is also similar to *Manuel* because the officer's suspicion was based on more than the defendant's refusal to consent to a second search. The court notes that although Morrison's different responses to requests to search different items need not be included for probable cause to be met, the Tenth Circuit's opinion in *Manuel* suggests that this would not be improper.

was unsure of its legality. In light of the events leading up to the dog sniff of Morrison's backpack, Robinson's calling for a K-9 unit was also reasonable.

### B. Certification and Final Response of K-9 Unit

This court has held that the Kansas Police Dog Association ("KPDA") is a reliable organization for certifying a dog as qualified to establish probable cause to search. *United States v. King*, 2012 WL 5363001 (D. Kan. Oct. 31, 2012). Morrison re-asserts the arguments made by the defendant in *King* by way of attaching the briefs from that case. For the reasons stated in *King*, the court finds that the KPDA remains a reliable organization for this purpose.

Morrison also argues that a dog sniff is a search for Fourth Amendment purposes and that the government has the burden of establishing the reliability of the certifying organization, testing procedures and judges. But the U.S. Supreme Court has ruled that a dog sniff itself is not a "search" for Fourth Amendment purposes. *See United States v. Place*, 462 U.S. 696, 707 (1983). Further, the U.S. Court of Appeals for the Tenth Circuit has held that the party seeking to suppress evidence found during a search after a positive dog alert bears the burden of proving the dog is unqualified. *United States v. Kitchell*, 653 F.3d 1206, 1224 (10th Cir. 2011) (internal citations omitted).

Finally, Morrison challenges whether the dog provided a sufficient signal on his backpack. Initially, the court notes that the dog's handler is typically in the best position to interpret the dog's actions. In this case, the facts provide additional evidence supporting probable cause based on the dog's final response.

The K-9 unit here consisted of Deputy Conaway and his dog Rocco. At the hearing, Conaway testified that Rocco has a passive "final response," which means that upon recognizing the scent of any drug he is trained on, Rocco sits. His certification shows that Rocco is qualified to detect marijuana, cocaine, methamphetamine, and heroin. Testimony by two KPDA judges who certified Rocco in May 2012 established that the dog was perfect in his testing, never missing planted drugs and never giving a false alert on non-drug material.

In the field, Conaway placed two more bags in line with the gun case and the backpack. Rocco sat between the gun case and the backpack, facing the backpack. Conaway testified that Rocco's facing the backpack indicated that it contained an illegal drug. The court also notes that by the time the dog sniff had occurred, Robinson had already searched the gun case and did not find drugs in it. This fact weighs against Morrison's argument that Rocco's signal was ambiguous by leaving only the backpack as a possible container for illegal substances.

Conaway believed Rocco was indicating on the backpack, and this interpretation was reasonable given the other facts mentioned above. For these reasons, the court finds Robinson had probable cause to search Morrison's backpack.

IV. Morrison's Pre-*Miranda* Statements

"Miranda rights need only be given to a suspect at the moment that suspect is 'in custody' and the questioning meets the legal definition of 'interrogation.' " *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008) (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir.1993)). The determination of whether a suspect is in custody is fact

intensive. First, the court considers the extent to which the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will. *United States v. Jones*, 523 F.3d 1235, 1240 (10th Cir. 2008). Second, we look to whether the nature of the questioning is likely to create a coercive environment from which an individual would not feel free to leave. *Id.* Finally, we determine whether police dominated the encounter. *Id.* "Interrogation" is defined as questioning or making statements that are reasonably likely to elicit an incriminating response from the suspect. *Abraham v. Kansas*, 211 F. Supp. 2d 1308, 1320 (D. Kan. July 19, 2002) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

The United States does not challenge whether this encounter amounted to custodial interrogation. Rather, the government argues that Robinson's questioning fits under the "public safety" exception to the *Miranda* rule requiring warnings. This exception requires an officer to have a reasonable belief that he is in danger; at minimum, he must have a reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it. *United States v. DeJear*, 552 F.3d 1196, 1201 (10th Cir. 2009).

In the case at hand, the exception excuses the failure to give proper *Miranda* warnings. Robinson believed that Morrison might recently have had a weapon. Robinson could also have reasonably believed there was a small risk that someone else might access the gun because Morrison's girlfriend lived in the area and had been with him at the accident scene. However, the scope of the exception must be limited to the

existence of a reasonably-perceived risk to public safety. Here, Robinson's questions continued even after he found the gun case belonging to Morrison and the threat to public safety was neutralized. After finding the gun case and confirming it was Morrison's, the exception no longer applied and Robinson should have given proper *Miranda* warnings. Instead, he continued to ask Morrison questions. Any inculpatory statements made by Morrison in response must be suppressed. Accordingly, the court suppresses any inculpatory statements made by Morrison after he answered that the gun case and backpack were his and before he was properly given *Miranda* warnings at the jail.

V. Conclusions

The court holds that Robinson's stop and frisk and entire detention of Morrison was continuously justified by reasonable suspicion. The court holds that the KPDA is a reliable association for certifying police dogs. The court holds that the K-9 unit's final response to sniffing Morrison's backpack provided probable cause for searching it. The court holds that the public safety exception to *Miranda* applied until Robinson had secured the gun case and backpack and confirmed they belonged to Morrison. Any inculpatory statements made by Morrison after this but before he was given *Miranda* warnings will be suppressed at trial.

IT IS THEREFORE ORDERED this 18th day of January, 2013, that Morrison's Motion to Suppress (Dkt. 14) is granted to the extent set forth herein.

s/J. Thomas Marten
J. THOMAS MARTEN, JUDGE